# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELIEL ORTHO MEDICAL CORP. ) | |
| ) | Civil Action No. |
| **Plaintiff,** ) | |
| ) | |
| v. ) | [Removal from the Court of First |
| ) | Instance, Superior Court of San Juan, |
| SKELETAL DYNAMICS, LLC; BLOG ) | Commonwealth of Puerto Rico, Civil |
| MEDICAL LLC; ORTHO ELITE SN ) | No. SJ2023CV094707] |
| CORP.; ORTHO ELITE GROUP LLC; ) | |
| MEDI-TECH ORTHOPEDICS, INC. ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## NOTICE OF REMOVAL

**TO THE HONORABLE COURT**:

Defendant Skeletal Dynamics, LLC ("Skeletal") hereby removes this Action from the Commonwealth of Puerto Rico, Court of First Instance, Superior Court of San Juan to the United States District Court for the District of Puerto Rico. Skeletal appears for removal only and reserves all defenses and rights available. In support of removal, Skeletal further states as follows:

### I. PROCEDURAL BACKGROUND AND RELEVANT FACTS

**A. Background**

1. On or about October 5, 2023, Plaintiff commenced this civil action in the Court of First Instance, Superior Court of San Juan, by filing a Complaint captioned <u>Eliel Ortho Medical Corp. v. Skeletal Dynamics, LLC et al.</u>, Civil No. SJ2023CV09407 (the "State Court Action"). In its Complaint, Plaintiff Eliel Ortho Medical Corp. ("EOM") alleges that it had an exclusive dealership agreement with Skeletal that started in December 2010 and expired on December 31, 2014, but the relationship continued without an expiration date. After years of trying to negotiate

new terms for the dealership agreement, on May 15, 2020, Skeletal sent EOM a letter informing its decision to withdraw from the Puerto Rico market effectively on July 15, 2020. However, EOM alleges Skeletal did not withdraw and never intended to leave the market. According to Plaintiff, Skeletal took advantage of the provisions of the Puerto Rico Dealership Act, Law 75-1964, infra, that allow the termination of a dealership relationship when a principal, in good faith, withdraws from a market because thirty-four (34) months after leaving the market Skeletal products reappeared in the Puerto Rico market. This time, allegedly, through the distribution of Codefendants: Blog Medical LLC; Ortho Elite SN Corp.; Ortho Elite Group LLC; and Medi-Tech Orthopedics LLC. ("Codefendants"), who are now purportedly responsible for distributing Skeletal's products in Puerto Rico. Based on those allegations, EOM claims that Skeletal terminated its dealership agreement without just cause. Consequently, EOM requested the Court to declare, among other things, the following: (1) that Skeletal's withdrawal from the Puerto Rico market was not done in good faith but done to evade liability under Law 75; (2) that Codefendants participated in Skeletal's fraudulent scheme and negligently interfered with its dealership agreement; and (3) order Skeletal and Codefendants to compensate EOM for the damages suffered for the termination of its dealership agreement without just cause under Law 75 and for tortious interference, respectively, under Puerto Rico General Tort Law.

2. On October 7, 2023 Codefendants were served. Codefendants have not filed an Answer to Complaint or otherwise pleaded.

3. On November 11, 2023 Skeletal received a summons along with a copy of a certified English translation of the Complaint. Skeletal has not filed an Answer to the Complaint or has otherwise pleaded. Pursuant to Fed. R. Civ. P. 81(c)(2)(C), Skeletal must answer or present other defenses or objections seven days after filing of this Notice of Removal. Pursuant to 28 U.S.C.

§ 1446(a), Skeletal has attached copies of all process, pleadings and orders served on it in the above-referenced action as **Exhibit A** to this Notice of Removal. Skeletal has also attached a copy of the Complaint it received as **Exhibit B.**

4. On December 4, 2023, EOM filed an Amended Complaint ("Amended Compl.") in the Puerto Rico Court of First Instance. The Amended Complaint added a claim under Puerto Rico's Industrial and Trade Secret Protection Act ("Trade Secret Act"), P.R. Laws Ann. tit. 10 §§ 4131 *et seq.* against José M. Matos Encarnación ("Matos"), who allegedly is the President of Medi-Tech Orthopedics LLC. Plaintiff alleged that Matos misappropriated a trade secret from EOM during business negotiations between Medi-Tech and EOM from approximately February to April 2023. Specifically, Plaintiff purports that during negotiations, Matos sent a text message to EOM's President, Mr. Miguel Santiago ("Santiago"), and asked him if EOM was still Skeletal's exclusive distributor in Puerto Rico. Santiago answered that since July 2020, they were not the exclusive distributor for Skeletal. Plaintiff alleges that the information regarding the termination of the EOM-Skeletal dealership agreement is a trade secret that Matos misappropriated to negotiate the terms of its alleged dealership agreement with Skeletal.

5. Skeletal and Matos have not received service of the Amended Complaint. Skeletal has not filed an Answer to the Complaint or has otherwise pleaded pursuant to Fed. R. Civ. P. 81(c)(2)(C).

6. All of the properly joined and served defendants consent to the removal of this action. Codefendants and Matos consent to remove is unnecessary because they were fraudulently joined in this action. See Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983) ("A party fraudulently joined to defeat removal need not join in a removal petition, and is disregarded in determining diversity of citizenship.").

7. This case is removable under 28 U.S.C. § 1441(b) because no "properly joined and served" defendant is a citizen of the Commonwealth of Puerto Rico.

### B. Skeletal's Removal is Timely

8. On November 11, 2023 Skeletal received the Complaint in the State Court Action. On December 4, 2023, EOM filed an Amended Complaint in the same Court. Skeletal files this Notice of Removal within 30 days of the date any defendant was served with a copy of the initial pleading setting forth the claim for relief upon which this action is based. See 28 U.S.C. §1446(b). Accordingly, the removal of this action is timely.

9. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Skeletal has satisfied the procedural requirements for removal, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. In filing this Notice of Removal, Skeletal reserves all defenses, including but not limited to lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, and failure to join and/or misjoinder of parties.

## II. SKELETAL HAS MET THE PROCEDURAL REQUIREMENTS FOR REMOVAL

10. No previous request has been made for the relief here requested.

11. This Notice of Removal is properly filed in the District of Puerto Rico pursuant to 28 U.S.C. § 1446(a).

8. No party in interest properly joined and served as a defendant in this action is a citizen of the state (Puerto Rico) in which this action was brought. See 28 U.S.C. § 1441(b).

9. The United States District Court for the District of Puerto Rico is the proper division to where this matter should be assigned because it is the District Court embracing the Court of First

Instance, Superior Court of San Juan, District of Puerto Rico, where Plaintiff's action is pending. See 28 U.S.C. § 1441(a); 28 U.S.C. § 119.

### III.  REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

**A.  There Is Complete Diversity of Citizenship Between The Parties.**

10. There is complete diversity between Plaintiff and the "properly joined and served" defendants.

11. Plaintiff EOM is a corporation organized under the laws of Puerto Rico with its principal place of business in San Juan, Puerto Rico, and therefore, is a citizen of Puerto Rico for purposes of determining diversity. See Amended Compl. ¶ 1.

12. Skeletal is, and was at the time EOM commenced this action, a limited liability company organized under the laws of the State of Florida. Skeletal is wholly owned by Skeletal Dynamics Inc., a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Florida. Therefore, for purposes of this action Skeletal is a citizen of Florida. 28 U.S.C. §1332(c)(1).

13. Upon information and belief, Blog Medical LLC ("Blog") is, and was at the time Plaintiff commenced this action, a limited liability company organized under the laws of the Puerto Rico, whose members reside and are domiciled in Puerto Rico.

14. Upon information and belief, Ortho Elite SN Corp. ("OES"), and was at the time Plaintiff commenced this action, incorporated under the laws of Puerto Rico with its principal place of business in San Juan, Puerto Rico, and, therefore, is a citizen of Puerto Rico for purposes of determining diversity. 28 U.S.C. §1332(c)(1).

15. Upon information and belief, Ortho Elite Group LLC ("OEG") is, and was at the time Plaintiff commenced this action, a limited liability company organized under the laws of the Puerto Rico, whose members reside and are domiciled in Puerto Rico.

16. Upon information and belief, Medi-Tech Orthopedics, Inc. ("Medi-Tech") is, and was at the time Plaintiff commenced this action, incorporated under the laws of the Puerto Rico with its principal place of business in San Juan, Puerto Rico. 28 U.S.C. §1332(c)(1).

17. Plaintiff pleads that José Matos Encarnación ("Matos") is a citizen of Puerto Rico, city of Rio Grande.

18. However, Codefendants and Matos' Puerto Rico citizenship does not preclude the proper removal of this action because they were fraudulently joined in this case.

**B.    The Court Should Disregard Codefendant's Citizenship For Jurisdictional Purposes Because They Are Fraudulently Joined In This Action.**

19. The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity. "[U]nder the doctrine of fraudulent joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant." Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014).[1] In this context, fraudulent joinder "applies to the joinder of an in-state defendant against whom plaintiff simply has no chance of success, whatever the plaintiff's motives." Brown v. GlaxoSmithKline LLC, No. MDL No. 1:15-md-2657-FDS, 2019 WL 2491587, at *42-43 (D. Mass. June 13, 2019) (citations omitted); see also Five Star Quality Care, Inc. v. Sunrise Senior Living, Inc., No. 09-

---

[1] "The term 'fraudulent joinder' is something of a misnomer, as this legal doctrine 'requires neither a showing of fraud nor joinder in one sense.'" See Bonilla-Pérez v. Citibank NA, Inc., 892 F.Supp.2d 361 (D.P.R. 2012) (quoting 16 Moore's Federal Practice § 107.14[iv][A]).

6

10503-RGS, 2009 WL 1456303, at *1 n.2 (D. Mass. May 22, 2009) ("Fraudulent joinder occurs when a defendant against whom a plaintiff has no conceivable claim is named as a party to a lawsuit solely for the purpose of defeating federal jurisdiction."). As such, a court weighing the issue of fraudulent joinder, may "consider additional evidence beyond the claims made in the pleadings, including affidavits of the parties," to determine whether the plaintiff has a genuine interest in pursuing claims against a defendant. Phillips v. Medtronic, Inc., 754 F. Supp. 2d 211, 215 (D. Mass. 2010); Stewart v. Ethicon, Inc., No. 19-4776, 2020 U.S. Dist. LEXIS 50271, at *13-14. (E.D. Pa. Mar. 19, 2020) (denying remand and ruling that the plaintiff fraudulently joined a non-diverse defendant, finding that plaintiff had no intent to pursue claims against that defendant).

20. Codefendants and Matos have all been fraudulently joined as defendants in this action to prevent the properly joined defendants from exercising their right to remove this case to federal court. Because the proposed defendants have been fraudulently joined, their citizenship should be disregarded. See 28 U.S.C. 1441 (b) (civil actions removable based on diversity jurisdiction may not be removed "if any of the partes in interest properly joined and served as defendants is a citizen of the State in which such action is brought."); Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921) ("[R]emoval cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."); see also Polyplastics, Inc. v. Transconex, Inc., 713 F. 2d 875, 877 (1st Cir. 1983); In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 109, 117 (D. Mass. 2006).

> *(i) There is no reasonable basis for the tortious interference claim against Codefendants because it fails as matter of law.*

7

21. Plaintiff failed to allege sufficient facts to establish the elements of a tortious interference action. To prevail on a claim of tortious interference Plaintiff must show the following: (1) the existence of a contract; (2) that the defendant who interfered had prior knowledge of the contract; (3) that plaintiff has suffered damages; and (4) a causal relationship between defendant's (interfering) acts and the damages suffered by plaintiff (causation). General Office Products v. A.M. Capen's Sons, 15 P.R. Offic. Trans. 727, 1984 WL 270915 (1984). Such action is applicable to an exclusive distributorship contract under Puerto Rico Dealership Act, Law 75-1964 ("Law 75"), P.R. Laws Ann. tit. 10, §§ 278 *et seq*. *Id.* at 734-35; see also A.M. Capen's Co. v. Am. Trading & Prod. Corp., 200 F.Supp.2d 34, 49 (D.P.R. 2002).

22. Plaintiff's cause of action for tortious interference is contradicted by the facts described in Plaintiff's Amended Complaint. The allegations state that there is no contract to interfere with. As explained in the previous paragraph, the existence of a contract is an essential element of a cause of action for tortious interference. However, under the facts pleaded, Plaintiff has not established the existence of an agreement between Skeletal and EOM. Plaintiff alleges that after entering into a dealership agreement with Skeletal for the distribution of several of its products on December 2010 the contract expired on December 31, 2014. Amended Compl. ¶ 13. 18. Since then and until June 15, 2020 EOM continued serving as the exclusive Skeletal Products dealer in Puerto Rico. Amended Compl. ¶ 20. However, after a negotiation impasse between the parties, Skeletal notified EOM, through a letter dated May 15, 2020, that after much reflection it had decided to leave the Puerto Rico market and its withdrawal would be effective on July 15, 2020. Amended Compl. ¶ 38; see also Termination Letter attached as **Exhibit C.** Thus, the Amended Complaint shows that since July 15, 2020, there has been no agreement between Skeletal and Plaintiff, precluding any possibility for tortious interference after that date. As a

result, on February 3, 2023 when Blog and Skeletal executed an *Independent Distribution Agreement* for the exclusive distribution of Skeletal products, the parties were free to enter into a distribution relationship.

23. Furthermore, even assuming arguendo that a valid contractual relationship existed between Skeletal and EOM, Plaintiff's tortious interference claim against Codefendants would still fail as a matter of law. The Supreme Court of Puerto Rico has held that there is no tortious interference when the underlying contractual relation is not for a fixed period of time (that is, it does not have an expiration date). Dolphin Int'l of Puerto Rico v. Ryder Truck Lines, 27 P.R. Offic. Trans. 869, 127 D.P.R. 869, 883 (P.R. 1991). Yet, from Plaintiffs' allegations EOM's supposed distribution agreement with Skeletal was for an indefinite period of time. Under the facts pleaded by Plaintiff, the original dealership agreement terminated under its own terms on December 31, 2014. However, since then until June 15, 2020 Skeletal and EOM continued their relationship without a fixed term. Amended Compl. ¶ 20. Thus, Plaintiffs' claim for tortious interference against Codefendants would not be cognizable even if a contract was deemed to exist between Skeletal and EOM. Therefore, including Codefendants in the instant action cannot defeat the removal. See Sea World, LLC v. Seafarers, Inc., 191 F. Supp. 3d 167 (D.P.R. 2016) (interpreting that joinder of codefendant, Aza Food Corp., Inc., did not defeat removal because plaintiff, Sea World LLC, failed to properly establish a claim for tortious interference by not including in the complaint any allegations regarding the fixed term or expiration of the purportedly exclusive dealership contract).

24. Furthermore, concerning OES, OEG, and Medi-Tech, Plaintiff's tortious interference claim will inevitably fail because they have no relationship with Skeletal whatsoever. The only party that has an exclusive distribution agreement with Skeletal is Blog. See **Exhibit D**

9

(Independent Distribution Agreement) and **Exhibit E** (Letter of Confirmation of Blog Medical LLC's Exclusive Distribution Rights). Thus, a causal relationship between OES, OEG, and Medi-Tech acts and the damages allegedly suffered for interference by Plaintiff is simply nonexistent.

*(ii) The complaint also fails to state a plausible claim for violation of Puerto Rico Trade Secrets Act against Matos.*

25. Plaintiff also claims a violation of the Puerto Rico Trade Secret Act, supra. The crux of Plaintiff's trade secret argument is that Codefendant Matos entered negotiations with EOM to acquire a trade secret and confirm whether EOM was still the distributor of Skeletal products. However, Matos did not misappropriate a trade secret. Plaintiff has no valid claim against Matos and has fraudulently joined him solely to defeat diversity jurisdiction and prevent removal.

26. Evidently, there is no trade secret involved in the instant action. The Trade Secret Act defines "trade secrets as any information: (1) "that has a present or a **potential independent financial value** or that provides a **business advantage**, insofar as such information is **not common knowledge** or readily accessible through proper means by persons who could make a monetary profit from the use or disclosure of such information" and (2) for which reasonable security measures have been taken, as circumstances dictate, to maintain its confidentiality. P.R. Laws Ann. tit. 10, § 4132 (emphasis added). Here, it is patent that the information allegedly "misappropriated" is not a secret. The fact that a distributorship was terminated is similarly ascertainable by customers and others in the field. Thus, this information does not qualify for trade secret status. Moreover, the information allegedly misappropriated has no independent economic value from not being generally known, which could provide EOM a business advantage. The mere identity of dealers or the termination of a dealership has no independent

value to competitors - it enables no unfair competition. This failure to derive economic advantage from the information further demonstrates that no trade secret is involved.

27. Even if we assume that Plaintiff has alleged enough facts to sustain that it owns a trade secret, it simply failed to allege any facts to demonstrate the measures, if any, it took to secure its confidentiality. P.R. Laws Ann. tit. 10, § 4132. The Puerto Rico Trade Secret Act requires that the plaintiff (a) actually own a trade secret —that must be described as specifically as possible without, of course, disclosing the same; (b) show that the trade secret was subject to reasonable security measures, taken to ensure confidentiality, and (c) show that defendant either (i) obtained the trade secret knowing it was acquired through inappropriate means or (ii) disclosed the trade secret without authorization. See P.R. Laws Ann. tit. 10, § 4139; TLS Mgmt. & Mktg. Servs., LLC v. Rodríguez-Toledo, 966 F.3d 46 (1st Cir. 2020); see also P.R. Laws Ann. tit. 10, §§ 4132-4133. Here, Plaintiff did not make any allegations of fact to demonstrate the measures taken to prevent a third party from misappropriating the trade secret. On the contrary, the pleaded facts established that EOM President volunteer the information without taking any security measures. See Ponce Adv. Med. v. Santiago González, 197 DPR 891 (2017); Sun W. Mortg. Co., Inc. v. Matos, 2023 WL 2025331 (P.R. Cir. Jan. 25, 2023). Thus, the trade secret allegation appears to be a tactic to prevent removal rather than a legitimate cause of action.

28. In short, it is unassailable that both of Plaintiff's claims against Codefendants and Matos fail on their face. Therefore, their presence as named defendants in this case should be ignored under the fraudulent joinder doctrine for diversity jurisdiction purposes.

### III.   THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

29. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co.

11

v. Owens, 574 U.S. 81, 89 (2014); see 28 U.S.C. §1332(a). A defendant's allegations regarding the amount in controversy are presumed correct. See Owens, 574 U.S. at 89.

30. Here Plaintiff alleges explicitly that they are entitled to damages greater than $3,339,976.10 for termination of Skeletal's dealership agreement without just cause. Accordingly, the amount in controversy in this action exceeds the jurisdictional threshold of this Court.

31. Because there is complete diversity of citizenship between the parties properly joined and the amount in controversy exceeds $75,000, exclusive of interest and costs, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

32. Skeletal will give written notice of this Notice of Removal filing as required by 28 U.S.C. § 1446(d). Attached hereto as **Exhibit F** is a copy of the Notification of Notice of Filing of Removal, which will promptly be served upon Plaintiff's counsel and filed with the Clerk of the Court of First Instance, Superior Court of San Juan, Commonwealth of Puerto Rico. See 28 U.S.C. § 1446(a), (d).

33. By removing this action to this Court, Skeletal does not waive any defenses, objections or motions available to them under state or federal law.

34. Skeletal reserves the right to amend or supplement this Notice of Removal.

**WHEREFORE** Defendants Skeletal Dynamics LLC pursuant to 28 U.S.C. § 1441, respectfully remove this action from the Court of First Instance, Superior Court of San Juan, to the United States District Court for the Commonwealth of Puerto Rico.

Dated: December 11, 2023

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, Puerto Rico 00918

Tel. 787-274-1212
Fax: 787-274-1470

s/ Oreste R. Ramos
Oreste R. Ramos
USDC No. 216801
oramos@pmalaw.com

s/ Saritza Rivera Vega
Saritza Rivera Vega
USDC-PR No. 309307
srivera@pmalaw.com

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this date we electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and served a true and correct copy of the foregoing by certified mail and via email to all counsel as identified on the service list below, this 11th day of December 2023.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, Puerto Rico 00918
Tel. 787-274-1212
Fax: 787-274-1470

/s/ Oreste R. Ramos
Oreste R. Ramos
USDC No. 216801
oramos@pmalaw.com

/s/ Saritza Rivera Vega
Saritza Rivera Vega
USDC-PR No. 309307
srivera@pmalaw.com